H. B. WHITNEY, Appellant, v. ALVERN S. WENDEL et al., Appellees.

DRAINS: Interest on Deferred Installments. Interest on final and de-
1  ferred installments under the contract does not accrue until the engineer has unqualifiedly accepted the work.

DRAINS: Performance of Contract—Absence of Right of Way Stakes.
2  A contractor may not complain of the absence of right of way stakes when no demand therefor was made during the work, and when it is made to appear that the contractor's work was simply *to clean out* an existing ditch.

DRAINS: Performance of Contract—War Industries Board. Record
3  held to furnish no support for the plea that the work on a drainage improvement was interrupted by an order by the War Industries Board.

*Appeal from Woodbury District Court.*—JOHN W. ANDERSON, Judge.

FEBRUARY 17, 1922.

SUIT in equity brought by H. B. Whitney, contractor, against the trustees of Farmers Ditch Drainage District No. 1, Woodbury County, Iowa, to enforce one contract and recover for certain work thereunder, and to rescind and cancel another contract on account of certain acts of the trustees which the con-

tractor claims breached the contract, and praying for judgment for the value of his services *quantum meruit*, and for an injunction restraining the trustees from declaring a forfeiture of the contract. Facts appear in the opinion. Plaintiff was denied relief, and prosecutes this appeal.—*Affirmed.*

*A. H. Bolton* and *Dunshee & Brody,* for appellant.

*Henderson, Fribourg & Hatfield,* for appellees.

ARTHUR, J.—Many years ago, the Farmers Ditch Drainage District No. 1 was organized in Woodbury County, and a drainage system constructed. Involved in this cause are two contracts to clean out and reconstruct the whole system. The two contracts ran contemporaneously. The first contract was for two sections of the work, and the second contract for the balance of the work, or 17 of the 19 sections. Afterwards, Section 8 was abandoned, and is not involved in this case. The contract covering Sections 1 and 2 of the work is the basis of Count 1 of this action. The second contract is the basis of Count 2 of this action. The work covered in Count 1 of the petition was completed before forfeiture was declared, and the work was paid for as the work progressed, to the extent of 80 per cent. The 20 per cent withheld, according to the terms of the contract, was settled and paid for after this suit was instituted. Whitney, contractor, claims under the first contract $800 for extra work for which he claims he never was paid; also under the first contract he claims interest on the 20 per cent which he claims was withheld from him after the engineer had approved of his work. A considerable part of the work under the second contract was never performed, and that is the principal controversy in this cause.

We will consider first plaintiff's cause of action alleged in Count 1 of his petition. Appellant's claim for interest on the 20 per cent withheld, we think is not well taken. Appellant's claim is that the work was completed and accepted on June 17, 1918, but we find from the engineer's report of date June 17, 1918, that it was not an unqualified acceptance of the work; that, before acceptance, the engineer required that certain obstructions be

1. DRAINS: interest on deferred installments.

removed from the ditch; and that the work was not accepted until later, and the balance due plaintiff was then allowed. The $800 damages demanded were for what appellee claimed to be extra work, because he was obliged, for about three miles along the railroad right of way, to place the dirt excavated largely on one side, rather than equally on both sides of the ditch. Appellant cannot recover on such claim, because the specifications provided that, "in all cases, material shall be deposited as directed by the engineer," and the contract provided to the same effect, and also contained the provision:

"For any increase in amount of work, ordered and directed by first party or its engineer, the price to be paid for the same shall be the same as that provided for regular excavation or work in the same section."

This disposes of appellant's cause of action under the first count of his petition adversely to him.

We now take up the cause of action alleged in the second count of the petition.

The breaches of contract which appellant claims appellees were guilty of were: That appellant was not furnished right of way on which to place the spoil; that two railroad crossings in the course of the ditch were not by appellees required to be excavated out at the proper time, and that this caused deposits of silt in the portions of the ditch which appellant had cleaned out, which he would be required to again clean out; that conduits and sluiceways at ends of laterals were ordered after the contract was let, which made cleaning out work more difficult and expensive, and caused silt deposit; that an order from the war industries board stopped the work, and operated as a cancellation of the contract; that the earth to be excavated so far exceeded the estimates of the engineer that the contract should be set aside.

2. Drains: performance of contract: absence of right of way stakes.

The record discloses that Whitney never asked for right of way stakes until after he had quit the work, April 28, 1919. No new ditches were dug, and the work was entirely to clean out and repair constructed ditches; and the laterals were not to be made wider, but to be cleaned out at the bottom. The specifications provided:

"In the cases of all laterals which are to be cleaned out

only, and not widened, the material will be taken from the bottom of the ditch and same reduced to grade, as shown on profile.''

The specifications further provided:

''The center lines of the ditches and laterals when repaired and improved will follow approximately the center lines of the respective ditches and laterals as they now stand.''

It would seem that the ditch itself was the best record of the right of way, and all that was necessary to guide the appellant in his work. The record discloses complaint by only one abutting landowner of spoil which ran down onto his land, and that was not made until a year later, and appellant was not required to pay damages therefor. The engineer in charge testified that appellant ''was never delayed by reason of not having right of way on which to place the dirt, and he did not quit on account of not having boundary lines of these laterals.'' The engineer also testified: ''I set stakes for the right of way.''

Appellant's claim is that the railroads did not clean out the right of ways at the proper time, and consequently that this caused dams and deposits of silt, which he should not be obliged to clean out. It is argued by counsel for appellant that the failure of the railway companies to excavate these two crossings left dams in the ditches, which would cause a deposit of silt. Whitney testified:

''The Chicago Northwestern cleaned out the right of way down to water in 1918.''

Trustee Wendel testified:

''I took no measurement of the Chicago Northwestern right of way; it was cleaned out in the fall of 1918.''

Trustee Sargisson testified:

''The Milwaukee cleaned out its right of way in 1919.''

The engineer testified:

''I do not believe the railroad companies, in taking out the dirt in the rights of way, interfered in any manner with the excavation, or created any damage to Mr. Whitney. He started to dredge at the upper end, north of the Milwaukee bridge, and would stop, and the silt came in behind the dredge. The work below or south of the bridge was not completed by Mr. Whitney clear up to the Milwaukee railroad; and the condition of the

railroad rights of way in no way caused silt to form in appellant's excavation.''

There is no competent evidence in the record that plans were not furnished to the railroads in the ordinary way and at the proper time for cleaning out their right of ways; and the right of ways were cleaned out by the companies.

Against the positive testimony of the engineer that ''not cleaning out the rights of way did not cause silt to form there,'' we have the argument of appellant's counsel that not cleaning the right of ways earlier would cause silt to accumulate in the ditch and laterals. The record does not disclose, by any measurements made, that there was any deposit of silt because railroad crossings were not excavated earlier.

Appellant's claim that conduits and sluiceways were not contemplated is not borne out by the record, for it appears from the testimony of the engineer that:

''The sluiceways or floodgates are mentioned in the preliminary report, which is a part of the contract. The failure of the trustees to keep the sluiceways open did not materially affect the work in any way. Some of the outlets at the ends of the laterals were stopped up for a time, but they were finally cleaned out, and did not interfere with the work for any length of time. The cleaning out or closing of the conduits did not affect Mr. Whitney's work in the main ditch; and the conduits were not in bad shape when he was working on the laterals, and did not interfere with his work on any of the laterals.''

Appellant's complaint that an order from the war industries board stopped the work is certainly not warranted. Ben Davidson, chairman of the war industries board at Sioux City, testified that:

3. DRAINS: performance of contract: war industries board.

''Applications for permits were made to me, and the permits issued by Mr. Young, of Des Moines. I received a reply from Mr. Young, saying that his committee had considered the matter carefully, and recommended that work should be continued to completion. He did not recommend it to Washington, but told me plainly that he allowed Mr. Whitney to go ahead with the work.''

Whitney testified:

"I received a letter from Ben Davidson, chairman of the local board of defense, saying that the restrictions were removed. I did proceed with the work, notwithstanding notification of the governmental restrictions, because in my opinion it was necessary work."

Appellant also complains that the earth excavated so far exceeded the estimates of the engineer that the contract should be set aside. This complaint is not well founded. The contract provides:

"The party of the first part may reduce or increase the amount of work without affecting the validity of this contract. And for any increase in amount of work, ordered and directed by first party or its engineer, the price to be paid for the same shall be the same as that provided for regular excavation or work in the same section."

The specifications further provide:

"The earth excavated from the main ditch and main lateral shall be placed in two equal and uniform embankments, one on each side of the ditch, *unless otherwise ordered by the engineer.*"

We find that the work under the contract involved in Count 1 of plaintiff's petition was accepted and fully settled for, and that plaintiff is not entitled to recover on his claim for extra work, nor for interest claimed.

After a careful examination of the record, we find that plaintiff has not made out a case entitling him to rescission and cancellation of the contract involved in the second count of the petition. Nearly two years after the contracts should have been performed, by their terms, appellant had abandoned the work under them entirely; and it was when the trustees were about to declare a forfeiture of the contract on which the second count of the petition is based, that appellant instituted this action for rescission and cancellation of such contract. The attempt to rescind came late. The record does not support the claims of appellant that appellees breached the contract. Appellant's undertaking was unfortunate, because his contracts extended into the war period. Because of the greatly increased cost of labor, the undertaking was disastrous to him, and he was unable to complete his contract. Likewise, it was unfortunate for the district. The final 20 per cent estimate of the work done by appel-

lant under the contract, involved in Count 2 of his petition, amounting to $9,246, was withheld from him, under the terms of the contract.

We find no warrant for disturbing the decree and judgment of the court below, and they are affirmed.—*Affirmed.*

Stevens, C. J., Evans and Faville, JJ., concur.